```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JOHN A. LUM,
                    Plaintiff,

         -against-                         MEMORANDUM AND ORDER
                                           05-CV-0708 (JS)(ETB)
JO ANNE B. BARNHART,
Commissioner of Social Security,

                    Defendant,
----------------------------------------X
APPEARANCES:
For Plaintiff:     Jacqueline Zore-Smrek, Esq.
                   Troy G. Rosasco, Esq.
                   Turley, Redmond & Rosasco, LLP
                   3075 Veterans Memorial Highway, Suite 200
                   Ronkonkoma, New York 11779

For Defendant:     Roslynn R. Mauskopf, Esq.
                   United States Attorney
                   Eastern District of New York
                   147 Pierrepont Street
                   Brooklyn, New York 11201
```

SEYBERT, District Judge:

**INTRODUCTION**

Pending before this Court is an action brought by John A. Lum ("Plaintiff") under 42 U.S.C. § 405(g) seeking reversal of the Social Security Commissioner's final determination of Disability Insurance Benefits and Supplemental Security Income benefits as provided in Title II and Title XVI of the Social Security Act ("SSA"). Pursuant to Rule 12(c), both parties moved for judgment on the pleadings. See Fed. R. Civ. P. 12(c). As a basis for reversal, Plaintiff claims that in determining that he was not disabled, the Administrative Law Judge ("ALJ") failed to consider whether his impairments equaled the Mental Retardation Listings

12.05C and 12.05D listed in Appendix 1 to 20 C.F.R. Subpart P, Part 404 ("Listings"). 20 C.F.R. § 404 app. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525.

Plaintiff also claims that the ALJ failed to prove that a job in the national economy exists for Plaintiff. Plaintiff argues that the ALJ improperly applied the Medical Vocational Guidelines ("Grids") because Plaintiff has both exertional and nonexertional limitations. In response, Commissioner of Social Security, Jo Anne B. Barnhart ("Defendant"), moves to affirm the ALJ's determination claiming it was based on both the correct legal standard and substantial evidence. For the reasons stated below, this Court DENIES Plaintiff's motion for judgment on the pleadings and GRANTS Defendant's motion, affirming the ALJ's final decision.

## BACKGROUND

### I. Procedural History

On May 16, 2001, Plaintiff applied for Disability Insurance Benefits under the SSA, alleging disability since January 6, 2001. (Tr. at 39.) Plaintiff's application was denied on September 18, 2001 and he requested a hearing two weeks later. (Tr. at 26-31.) Plaintiff appeared before ALJ Jerry J. Bassett on October 21, 2002 for a hearing. On May 6, 2003, the ALJ decided that Plaintiff was not disabled and denied Plaintiff's applications for benefits. (Tr. at 14-23, 241-68.) Plaintiff requested review of the ALJ's decision with the Appeals Council. (Tr. at 13.) On

December 20, 2004, the Appeals Council denied review because it determined that there was no reason to review the ALJ's decision. (Tr. at 3-6.) On February 4, 2005, Plaintiff filed the instant action before this Court.

II. Plaintiff's Non-Medical Background

Plaintiff was born on June 12, 1952. (Tr. at 39.) He graduated from high school in 1971 and was a driver for the highway department for twenty years, from 1981 to January 2001. (Tr. at 50, 55.) His duties involved driving, highway maintenance, garbage disposal, cement work, and lawn care and required him to lift up to one-hundred pounds. (Tr. at 50, 245-46.)

III. Plaintiff's Medical Background

Plaintiff had a history of infrequent seizures during the period from 1997 to 2000. (Tr. at 120-34.) After a seizure in November 2000, Plaintiff lost his driver's license because the doctor stated that his medication was not working and Plaintiff was not able to drive. (Tr. at 251-52.) Evidence of medical treatment during that period indicated an increase in the frequency of his seizures, which peaked at about one per month by November of 2001. (Tr. at 175.) On January 8, 2001, Plaintiff suffered a seizure which caused him to fall and twist his ankle. (Tr. at 121.) He has not engaged in substantial gainful activity since then. (Tr. at 49.)

Plaintiff likely has a learning disorder. At the Stony

Brook Epilepsy Management Program ("EMP"), Dr. Richard Lamonica determined that Plaintiff has a reading, writing, and arithmetic ability below the 5th grade level, a verbal IQ of 76, a performance IQ of 91, and a full scale IQ of 81. (Tr. at 140.) In a neurological examination, Dr. Kautilya Puri noted that Plaintiff was able to cook, clean, do laundry, use public transportation, shop for food and clothing, and manage his money. Dr. Puri noticed no impaired judgment or significant memory impairment, no difficulties in fine motor activities, and gave Plaintiff a "fair" prognosis. (Tr. at 135-37.)

IV. Plaintiff's Medical Evidence

During the period Plaintiff claims disability, Dr. Todd Rosenzweig of the EMP was Plaintiff's primary treating doctor. (Tr. at 185-203.) In March 2001, Dr. Rosenzweig noticed that Plaintiff had a slight decline in memory and cognitive functioning. (Tr. at 193, 197.) Yet on nearly every visit, the doctor noted that Plaintiff was oriented in time, place and person, was cognitively intact, and had full motor and sensory power. (Tr. at 186, 193-94, 198-99.) Dr. Rosenzweig also noted that Plaintiff's partial epilepsy, i.e., his seizure disorder, was well controlled with medication and that his memory deficits were possibly a side effect of increased medication. (Tr. at 186-87.)

In September 2001, Dr. Mary Andriola took over as Plaintiff's primary neurologist. (Tr. at 175-84.) Dr. Andriola

4

made similar findings. (Tr. at 183-84, 220.) On several occasions, Dr. Andriola noticed that Plaintiff's medication levels were abnormal and adjusted his medication intake accordingly. (Tr. at 173-74, 180, 221, 223-24.) Plaintiff's seizures were partial and localized, occurring once a month. Dr. Andriola noticed that Plaintiff was lethargic due to his medications (Tr. at 175-78). Dr. Andriola also suspected that that one of Plaintiff's alleged seizures in July 2002 may have been due to toxicity from the medications and prescribed a new medication, Keppra, for Plaintiff in July 2002. (Tr. at 227-28.) In Plaintiff's August 2002 check-up, Dr. Bello, another doctor from the EMP, reported that Plaintiff tolerated his new medication very well and was seizure-free since his last visit. (Tr. at 229.) Dr. Bello also noted that Plaintiff's memory problems were stable and found no abnormalities. (Id.)

At the hearing, Plaintiff confirmed that his last seizure was in July 2002 and prior to that, 10 months before. (Tr. at 254-56.) Plaintiff also said that as a result of his medication, he slept easily, had some memory difficulties and took three to four afternoon naps per week. (Tr. at 259-60.) Plaintiff applied for but did not obtain other jobs. (Tr. at 252.) When asked whether he could perform some of the duties of his past job, such as shoveling snow or raking leaves, Plaintiff responded, "I can do some of that." (Tr. at 254.) When asked if he could seek another

5

job that does not involve driving, Plaintiff admitted that he "might be able to," but if he does, he may lose his insurance from his previous job and that he would have to "pay a lot for [his] doctors." (Tr. at 256.)

V. ALJ's Findings

In his May 6, 2003 decision, ALJ Bassett made the following findings. First, the medical evidence established that Plaintiff had a history of seizures and a learning disorder but did not have an impairment, or any combination of impairments, that met or medically equaled any in the Listings. (Tr. at 22.) Second, Plaintiff's "subjective allegations [were] not supported by the medical evidence and [were] not credible to the extent of establishing 'disability.'" (Id.) Third, Plaintiff had the physical residual functional capacity to perform light and medium work and the mental residual functional capacity to perform entry-level, unskilled work. (Id.) Finally, based on the Grids, Plaintiff's background, and his residual functional capacities, Plaintiff was capable of performing a significant number of jobs, and hence, Plaintiff was not disabled as defined in the SSA. (Id.)

**DISCUSSION**

I. Standard of Review

This Court does not review de novo the Social Security Administration's final decision in denying Plaintiff's disability benefits claim. See Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d

6

Cir. 1997). Rather, the issue before this Court is whether the Commissioner's determinations "[were] supported by substantial evidence in the record as a whole or [were] based on an erroneous legal standard." Id. (citing Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).

"[T]o determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Monguer v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)). If there is substantial evidence in the record to support the Commissioner's findings, the Commissioner's findings are conclusive and must be upheld. See 42 U.S.C. §405(g); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to weigh the credibility of witnesses including the claimant. See Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). Just because this Court would come to a different conclusion than the

Commissioner, this Court cannot "substitute its own judgment for that of the ALJ." Lopez v. Barnhart, 2002 U.S. Dist. LEXIS 14552, at *4 (S.D.N.Y. Aug. 8, 2002) (quoting Williams v. Barnhart, 2002 U.S. Dist. LEXIS 6757, at *12 (S.D.N.Y. Apr. 18, 2002)).

II. Establishing a Disability

A claimant seeking to receive disability benefits under the SSA must be disabled within the meaning of the Act. See 42 U.S.C. § 423(d); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). A person is "disabled" when he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be severe enough either to (1) meet or equal an impairment in the Listings, or (2) deprive him of the ability to perform his past relevant work and any work that exists in significant numbers in the national economy. See 20 C.F.R. § 404.1560(c); Tucker v. Bowen, 1989 U.S. Dist. LEXIS 1055, at *4 (E.D.N.Y. Feb. 2, 1989).

A five-step sequence is utilized in evaluating disability claims. See 20 C.F.R. § 404.1520. The first question is whether the claimant is currently engaged in substantial gainful activity. See 20 C.F.R § 404.1520(a)(4)(i). If he is not, the second question is whether the claimant has a severe impairment which

significantly limits his physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(a)(4)(ii). If he does, the third question is whether the claimant has an impairment that, based on the medical evidence, meets or equals a Listing in Appendix 1. See 20 C.F.R. § 404.1520(a)(4)(iii). If he does, the claimant is then presumed to be disabled and is entitled to disability benefits. If he does not, the fourth question is whether the claimant, despite the impairment, is still able to perform his past relevant work. See 20 C.F.R. § 404.1520(a)(4)(iv). If he is not, the final question is whether there is work in the national economy that the claimant could perform. See 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner has the burden of proving the last inquiry. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

III. Analysis

   A. The ALJ Properly Found That Plaintiff's Impairment Did Not Medically Equal The Listing For Mental Retardation.

Substantial evidence supports the ALJ's findings and conclusions. Documented medical evidence from four treating doctors, two non-treating doctors, and one state agency medical consultant, support the finding that Plaintiff suffered from both a seizure disorder and a learning disorder -- a type of "mild mental retardation." (Tr. at 18-20.) Although the medical evidence in the record may indicate that some of Plaintiff's mental impairments, like his memory problems, were less serious than that

9

which Plaintiff's testimony suggested, the ALJ is not bound to accept Plaintiff's subjective testimony about his symptoms without question. (Tr. at 139-40, 183, 224, 260.) The ALJ resolves evidentiary conflicts and issues of credibility regarding the claimant and other witnesses. See Carroll, 705 F.2d at 642; Misuraca v. Sec'y of Health and Human Servs., 562 F. Supp. 243, 245 (E.D.N.Y. 1983).

After recognizing Plaintiff's two disorders, the ALJ concluded that Plaintiff's disorders neither met nor equaled any of those in the Listings. (Tr. at 139, 199.) The medical evidence indicated that Plaintiff's seizures were not frequent enough to meet Listing 11.02 or 11.03 for epilepsy. See 20 C.F.R. § Subpt. P, App. 1, 11.02-03 (Listing 11.02 requires grand mal seizures to occur more than once a month, and Listing 11.03 requires petit mal seizures to occur more often than once a week). Plaintiff's IQ was too high to meet Listing 12.05C or 12.05D for mental retardation. See 20 C.F.R. § Subpt. P, App. 1, 12.05C-D (requiring IQ between 60 and 70).

Plaintiff does not dispute the finding that his seizure disorder failed to meet or equal Listings 11.02 and 11.03 for seizures. The issue that Plaintiff appeals is whether his learning disorder and mental impairments equaled the Listing for mental retardation, 12.05C or 12.05D. Plaintiff first argues that the ALJ failed to consider evidence that shows he equaled the Listing for

mental retardation.

The record, however, indicates the opposite. The ALJ acknowledged Plaintiff's learning disorder and mental retardation several times in his decision and explicitly noted that although Plaintiff has a "history of seizures and a learning disorder . . . he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1." (Tr. at 22.) The language of the ALJ's decision clearly shows that the ALJ considered whether Plaintiff's learning disorder met or equaled both the Listings for seizures and mental retardation. (Tr. at 18-22.)

Plaintiff further argues that the Commissioner's Program Operations Manual § DI 24515.056 provides that an impairment may equal Listings 12.05C or 12.05D if the IQ is slightly higher than the required range. In this case, Plaintiff's lowest IQ score was six points higher than the maximum score allowed to meet the Listing; his other scores were eleven and twenty-one points higher. To medically equal a Listing, the Regulations require other "findings related to [the] impairment that are at least of equal medical significance" to the required criteria. 20 C.F.R. § 416.926(a)(1)(ii). The evidence, as indicated by a majority of the treating and non-treating doctors, showed that Plaintiff's other conditions, i.e., his memory and cognitive impairments, were either too mild or too stable to be equal in medical significance to the

Listing for mental retardation. (Tr. at 135-37, 139-41, 183-84, 186, 218, 230-31.) Hence, based on the evidence in the record, the ALJ properly concluded that Plaintiff did not have any impairment that equaled the Listing for mental retardation.

Plaintiff's final argument is that the ALJ, by making a blanket statement, did not give express rationale for finding that Plaintiff's disorders did not meet or equal any Listing. Plaintiff claims that this failure to specifically discuss the Listings is reversible error. Plaintiff cites Armstead v. Chater, 892 F.Supp. 69 (E.D.N.Y. 1995), in support of his "rule" yet he fails to see that Armstead was remanded because the findings in that case were not supported by substantial evidence and not because of the ALJ's failure to discuss his findings. See id. at 76. In contrast, the record in this case contains adequate evidence to support the ALJ's conclusions, and hence, this case is distinguishable from Armstead.

With regard to this issue, the Second Circuit case of Berry v. Schweiker is controlling. The Berry Court stated, "[T]he absence of an express rationale does not prevent [the court] from upholding the ALJ's determination regarding the [Plaintiff's] claimed listed impairments, [if] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." Id. at 468.

In the instant case, the ALJ indicated that he had considered evidence of Plaintiff's two impairments but nonetheless

determined that neither - together or alone - was severe enough to meet or equal any of the Listings. (Tr. at 18-19). This determination was supported by substantial medical evidence from neurologists and doctors who examined Plaintiff (Tr. at 135-41) and the State Agency Medical Consultant. (Tr. at 150-67.)

Plaintiff attempts to distinguish the instant case from Berry. Although Plaintiff argues that there were different impairments, medical evidence, and work history between the two cases, this Court sees these differences between Berry and this case as immaterial. No two cases are exactly alike; the Court extracts guiding principles from case law and applies those principles to the facts at hand. Berry and the instant case are similar in all material respects.

Instead, Plaintiff urges the Court to apply the rationale of Lee v. Shalala, 872 F.Supp. 1166 (E.D.N.Y. 1994). Plaintiff's argument, however, for adopting Lee is flawed because Lee materially differs from this case. Lee was remanded because the ALJ completely ignored the claimant's mental impairments in denying disability benefits while in this case, the ALJ considered all of Plaintiff's relevant impairments in making his determination. See Lee, 872 F. Supp. at 1170. Accordingly, the Court rejects Plaintiff's suggestion to apply Lee to the case at hand.

In sum, substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet or equal any

of the Listings in Appendix 1. Even if this Court could differ on the result based on the facts of this case, the fact that substantial evidence supports ALJ's conclusions makes them final and conclusive.

B. The ALJ Properly Applied The Grids.

The second issue Plaintiff raises is the ALJ's determination that Plaintiff was able to perform a significant number of jobs in the national economy. Plaintiff argues that the ALJ's reliance on the Grids was improper because Plaintiff had both exertional and nonexertional limitations, and the Grids apply only when a claimant has exertional limitations. This Court disagrees.

Citing Bapp v. Bowen, 802 F.2d 601 (2d Cir. 1986), Plaintiff misstates the law. Bapp indicates that even with nonexertional limitations, the Grids may still control. See Bapp, 802 F.2d at 605-06 (emphasis added). District courts determine whether the Grids should be used "on a case-by-case basis." Id. Applying the Grids may be inappropriate when the nonexertional limitations "significantly diminish" the range of work permitted by the claimant's exertional limitations. See id. "Significantly diminish" means an "additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citing Bapp, 802 F.2d at 606)).

Here, the ALJ determined that Plaintiff's physical

14

residual functional capacity limited him to light and medium work and his mental residual functional capacity limited him to unskilled work. (Tr. at 21.) Addressing this very issue, the ALJ explained in his decision that Plaintiff's nonexertional impairments, including his memory loss and mild mental retardation, did not affect the type of work that the ALJ found him to be capable of. (Id.) For instance, while Plaintiff's memory problems rendered him incapable of detailed tasks, those tasks are not required in unskilled work. (Id.) Substantial medical evidence supports a conclusion that Plaintiff's nonexertional impairments do not significantly narrow his range of work. In a questionnaire from the ALJ, Dr. Andriola indicated that Plaintiff's impairments did not limit Plaintiff in the following areas: lifting, carrying, standing, walking, sitting, stooping, kneeling, balancing, crouching, crawling, pushing, pulling, reaching, handling, speaking, or hearing. (Tr. at 232-35.)

Plaintiff further argues that the ALJ acknowledged mental retardation as an impairment but did not adequately contemplate all the facts to conclude that vocational expert ("VE") testimony was unnecessary. Plaintiff does not sway the Court. Plaintiff cannot require the ALJ to contemplate and give more weight to the evidence that supports Plaintiff's case. The ALJ alone determines the credibility and weight of the evidence and as long as substantial evidence supports his findings, that decision is final. See

Carroll, 705 F.2d at 642. While the ALJ did not expressly state testimony from a VE was not required, substantial evidence shows that a VE was not needed. Other than the abundant medical evidence that indicated Plaintiff's mental condition was mild and not significantly limiting in any way, Plaintiff admitted at the hearing that he was able to do some light and medium work, i.e., shoveling snow and raking leaves. (Tr. at 142-67, 254.) The combination of medical evidence and Plaintiff's own admissions support the conclusion that testimony from a VE was unnecessary.

Plaintiff urges this Court to adopt the Third Circuit decision of Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000), which endorses a bright line test. Under Skyes, the use of Grids in determining whether jobs are availablse is never allowed if any nonexertional limitations exist. See id. at 269-70. This rule is contrary to that of the Second Circuit and this Court declines to depart from controlling precedent. See Bapp, 802 F.2d at 605-06.

Finally, when all his legal arguments have been exhausted, Plaintiff argues that to rely on the ruling of Bapp would miss the reality of the situation. This argument is also unpersuasive. The mere reality of Plaintiff's situation warrants a departure from the law. In this case, the function of this Court is clear: this Court may overturn an ALJ's determination only if it is unsupported by substantial evidence. Because the ALJ properly applied the Grids to find that jobs exist in the national economy

for Plaintiff and substantial evidence supports such determinations, this Court upholds the Commissioner's final determination.

## CONCLUSION

For the reasons stated above, Defendant's motion for is GRANTED, and Plaintiff's motion is DENIED. The ALJ's final decision is AFFIRMED. The Clerk of the Court is ordered to mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          August 28, 2006